**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KEVIN FULLER,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN,<br><br>Defendant. | Civil Action No.: RDB-20-3297 |

**MEMORANDUM OPINION**

On November 17, 2020, this Court issued an Order requiring Plaintiff to file an Amended Complaint and directing counsel for the Division of Correction to show cause why injunctive relief should not be granted in Plaintiff's favor. ECF 2. On December 4, 2020, Plaintiff was granted an additional 28 days to file his Amended Complaint. ECF 7. Counsel for the Division of Correction filed a response to this Court's Order to Show Cause (ECF 8); Plaintiff amended his complaint through correspondence indicating he wanted to name Officer T. Tyler as a defendant.[1] ECF 4. He has not filed a Reply to the Response to Show Cause. For the reasons that follow Plaintiff's request for injunctive relief shall be denied and the complaint shall be dismissed without prejudice.

This Court directed a preliminary response from Division of Correction counsel because Plaintiff alleged that: he is not receiving medical care, was denied his property, was denied access to the administrative remedy procedure, and was improperly confined to segregation confinement. ECF 2 at 2. The response indicates that Plaintiff was transferred from Maryland Correctional Training Center (MCTC) to Eastern Correctional Institution (ECI) on October 8, 2020. ECF 8-1. The medical care he has received since his transfer to ECI includes an initial assessment on the date of his arrival (ECF 8-3 at 6; 18-27); an ultrasound of his kidneys and bladder showing normal

---

1 The Clerk will be directed to amend the docket to include Tyler as a defendant.

results (*id*. at 15-16); he was seen by a nurse during an initial period of quarantine on October 15, 19, 21, and 25, 2020 (*id*. at 7 and 9-11); he was seen on November 3, 2020 for a medication reorder and a request to repair his eyeglasses (*id*. at 12); and he was treated after he was pepper-sprayed by correctional officers on October 8, 2020 (*id*. at 5). From the records presented, it does not appear that medical staff has been unresponsive to Plaintiff's request for care, nor does it appear he has been prevented from receiving care through interference by correctional staff.

With regard to the use of force that occurred on October 8, 2020, the records provided indicate that Plaintiff was placed into a cell with another inmate, Sceion Hardy. ECF 8-2 at 3. In a Notice of Inmate Rule Violation written by Officer T. Tyler, the following relevant narrative is provided:

> On 10/8/20 at approximately 1516hrs I . . . heard several loud banging sounds coming from cell 4A3, where Inmates Fuller, Kevin . . . and Hardy, Sceion . . . are housed. Upon reaching the ell, I observed Inmate Fuller utilizing the cell desk, which had been bolted to the wall, to hold Inmate Hardy to the wall. I then observed Inmate Fuller begin to strike Inmate Hardy with closed fisted strikes to the head and body. Inmate Hardy attempted to strike Inmate Fuller with closed fisted strikes in return. I gave several orders for the fighting inmates to cease, which were ignored. I then utilized pepper spray in an attempt to get the inmates to stop fighting, while continuing to give orders to stop fighting. The fighting inmates ignored the orders and continued to fight. Another burst of pepper spray was utilized and I gave another order to stop fighting, which was obeyed. I then gave orders for the inmates to move to the back of the cell, which was obeyed. Responding staff, Ofc. V. Collins, COII handcuffed Inmate Hardy and removed him from the cell. Ofc. A. Christopher, COII handcuffed Inmate Fuller and removed him from the cell.

ECF 8-2 at 3. Plaintiff was charged with violation Rule 308 (destruction or damage to State property) and Rule 102 (fighting with another inmate). *Id*. At an adjustment hearing held on October 29, 2020, Plaintiff and Mr. Hardy maintained they were not fighting, and Officer Tyler could not recall if he saw Plaintiff hitting Mr. Hardy. *Id*. at 4-5; 7. During his testimony, Plaintiff stated that Mr. Hardy told him when he came into the cell that he would need to leave. *Id*. at 6.

Plaintiff noticed that the desk in the cell was partially pulled away from the wall and claims Mr. Hardy began banging the desk against the wall after telling Plaintiff he needed to leave. *Id*. Plaintiff attempted to get the attention of the tier officer, but nothing he tried worked and the officer simply looked through the window and laughed. *Id*. Plaintiff "then started banging and pulled the desk completely off the wall." *Id*. In his final statement during the hearing, Plaintiff maintained he should be found not guilty on the fighting charge; that he would "take the charge for misuse of the desk;" and stated his life was at risk. *Id*. at 7.

Based on the testimony provided, the hearing officer found Plaintiff not guilty on the Rule 102 charge and guilty on charges he damaged or destroyed State property. ECF 8-2 at 8. The hearing officer's decision noted that Officer Tyler "should have recalled more of the incident where it was only 21 days since the incident" and found that his testimony was not "compelling as to if an assault did occur." *Id*. The decision also notes that Plaintiff "admitted that he pulled the desk off the wall and was banging it against the wall" which supports a finding of guilty on the Rule 308 charge. *Id*. The hearing office also noted that it was "more likely than not that [Plaintiff] may have been defending himself." *Id*. Plaintiff was sentenced to 15 days of segregation and revocation of 15 days of good conduct credit. *Id*. at 9. In addition, his access to a "radio, compact disc, or tape player, television, telephone, or commissary" was suspended for 15 days. *Id*.

In his appeal of the adjustment hearing results, Plaintiff took issue with being confined to segregation for an additional 15-day period following the decision because he had already been in segregation before the hearing took place. ECF 8-2 at 2. Plaintiff also expressed his belief that Sceion Hardy intended to harm him and asked for Mr. Hardy to be placed on his enemies list. *Id*. He further claimed he had been unjustly maced and unjustly kept on staff alert for three weeks. *Id*. An investigation into the use of force, *i.e.*, pepper spray, found the force was justified under

the circumstances. *Id*. at 30 (Lt. Stephen Elliott's Summary and Recommendations following his investigation); 32 (Capt. Brewer's concurrence).

In correspondence filed by Plaintiff with this Court and received on November 30, 2020, he alleges that he was kept in segregation for four weeks after his segregation sentence expired and could not comply with the time requirements for filing an administrative remedy procedure complaint ("ARP") because officers would not give him the forms. ECF 4; ECF 4-1 at 2 (ARP complaint). Plaintiff further maintains he was "illegally" pepper sprayed by Officer Tyler and that his medication ran out on November 4, 2020 and was not refilled. ECF 4 at 2.

**Standard of Review**

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

An additional consideration is required when injunctive relief is sought in the context of prisoner civil rights case. Under 18 U.S.C. § 3626(a)(2):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

*Id*.

**Analysis**

Counsel for the Division of Correction maintains that Plaintiff is not entitled to injunctive relief because he is unlikely to succeed on the merits at a trial as: he failed to properly exhaust administrative remedies prior to filing suit; his claim regarding medical care represents a mere disagreement with a prescribed course of treatment; the claims raised do not state an Eighth or Fourteenth Amendment violation; and the disciplinary hearing held complied with procedural due process. Further, counsel maintains that the balance of equities do not favor Plaintiff as there is a public interest in having prisons managed by experienced professionals and Plaintiff's demand to be housed in a different housing unit or prison interferes with that interest. ECF 8. Because this Court finds that Plaintiff is unlikely to success at trial, the remainder of Defendant's assertions will not be addressed.

Failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by a defendant. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been

exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Relevant to this case, the ARP process does not apply to case management decisions (such as housing assignments) but are to be directly filed with the Inmate Grievance Office ("IGO"). COMAR 12.02.28.04(B)(1); 12.07.01.04(B)(9)(c). It also does not apply to complaints about disciplinary procedures and decisions. COMAR 12.02.28.04(B)(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.03.01.30(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. COMAR 12.03.01.30(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the

prisoner may then appeal to the IGO. COMAR 12.03.01.30(C); *see also* COMAR 12.07.01.05 and .08.

Counsel for the Division of Correction provided a declaration from the Director of the IGO, F. Todd Taylor, Jr., indicating that Plaintiff has not filed any complaints with the IGO concerning the matters raised in his complaint. ECF 8-5. Thus, with respect to his housing assignment and the validity of his adjustment conviction, his claims are unexhausted making it unlikely that he can succeed on the merits of those claims. Plaintiff is not entitled to injunctive relief on those two claims.

Plaintiff's assertion regarding his failure to file an ARP is that he was denied access to the ARP process when officers would not provide him with the forms and would not give him a receipt for any complaint he was able to file. ECF 1; ECF 4. There are three ARPs written by Plaintiff that appear in the record; each was dismissed for procedural reasons. ECF 8-2 at 64-68. In the first ARP filed by Plaintiff on November 10, 2020, he complained that his disciplinary segregation time had been over for three weeks and that Lt. Elliott sent him a note that day stating they were waiting for an approval for Plaintiff's transfer. *Id*. at 65 (ARP ECI 1021-20). Plaintiff also explained why he wanted to be transferred, complained about the incident between himself and Mr. Hardy, complained about the adjustment proceedings against him, and stated that when he came off of "staff alert" he tried to get ARP forms from correctional staff but they would not give him one. *Id*. at 66. This ARP was dismissed because it contained more than one claim; Plaintiff was instructed to resubmit the ARP with only one claim presented. *Id*. at 65. No date is provided for a resubmission deadline. *Id.*

In his second ARP, which is dated November 15, 2020, Plaintiff notes at the top of the form that "guards are refusing to return ARPs" and also "refuse to sign" the receipt portion of the

ARP, making processing of the complaints impossible. ECF 8-2 at 67 (ARP ECI 1022-20). In the ARP Plaintiff complains that he was pepper sprayed unjustly by Officer Tyler and that officers at ECI are refusing to return ARPs once they are given to them by an inmate. *Id*. at 68. He adds that his property was taken, he was improperly placed on staff alert, and the infraction written by Tyler was false. *Id*. The ARP was dismissed as untimely on November 16, 2020. *Id*. at 67.

On November 17, 2020, Plaintiff filed a third ARP complaining that he has chronic kidney disease and had yet to receive a medical evaluation since his arrival; that he needed to be moved out of cell 4-B-21 because his disciplinary segregation time had been over for four weeks; and requesting restoration of privileges that mirror those provided to general population inmates. ECF 8-2 at 64. This ARP was dismissed on November 18, 2020, because it failed to comply with the instructions provided by the Administrative Remedy Coordinator for resubmission. *Id*.

The record belies Plaintiff's assertion that the administrative remedy procedure was unavailable to him. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at, 725. The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S.Ct. 1850, 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to

provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Here, the record reflects that Plaintiff was instructed to include one claim in any ARP he filed, but he failed to do so. Further, he included claims in his ARPs that are not addressable through that process; rather, a complaint with the IGO is the avenue to raise a claim regarding housing assignments and disciplinary proceedings. He did not file a complaint with the IGO, nor did he appeal the dismissals of his ARPs to the Commissioner of Correction *before* filing this lawsuit. Plaintiff's complaint was received by this Court on November 13, 2020; even if he had started a process to appeal the dismissals of his ARPs, he did not complete the process before resorting to filing a complaint in this Court. ECF 1.

By failing to exhaust administrative remedies prior to filing his lawsuit, Plaintiff thwarts the purpose of the exhaustion requirement in the Prison Litigation Reform Act (PLRA). That purpose includes "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore*, 517 F.3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also*

*Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo*, 286 F.3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

As noted, failure to exhaust administrative remedies requires dismissal of the complaint without prejudice. Plaintiff is therefore unlikely to succeed on his claims and is not entitled to injunctive relief. By separate Order which follows, the complaint shall be dismissed without prejudice.

__2/11/2021________
Date

___________/s/___________________
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE